UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ESLYN VINCENT,

                    Plaintiff,

       - against -

NEW YORK CITY TRANSIT AUTHORITY and
MANHATTAN AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY,

                 Defendants.
-----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

**MEMORANDUM AND**
**ORDER**
17-CV-68 (RRM) (RML)

       Plaintiff Eslyn Vincent, proceeding *pro se*, brings this action against the New York City

Transit Authority ("NYCT") and Manhattan and Bronx Surface Transit Operating Authority,

(collectively, "Defendants,") alleging, among other things, discrimination on the basis of

disability and failure to accommodate her disability in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and discrimination on the basis of

disability in violation of the New York State Human Rights Law, Executive Law § 296 *et seq.*,

and New York City Human Rights Law, N.Y. City Admin. Code § 8–107.  (Compl. (Doc. No.

1).)  Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56.  (Notice of

Motion (Doc. No. 26).)  For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

Factual Background

       Because the summary judgment motion is unopposed, the relevant facts outlined below

are drawn from Defendants' Local Rule 56.1 Statement of Material Facts, to the extent that those

facts are supported by evidence submitted by Defendants in connection with the motion for summary judgment.[1]

Vincent was hired by NYCT as a bus operator in 2006.  (Defendants' Rule 56.1 Statement ("Defs.' SOF") (Doc. No. 27) ¶ 3.)  She is a member of the Transport Workers Union, Local 100.  (*Id*. ¶ 4.)

On April 23, 2014, Vincent reported to General Superintendent John McGahern that she was being harassed by her dispatchers, other operators, and customers, and that her phone was being bugged.  (*Id*. ¶ 7.)  She also alleged that she had received a text message in Spanish from an unknown number telling her to stay away from another operator's husband.  (Exhibit E, Exhibits D–T (Doc. No. 29–1) at 11.)[2]  McGahern removed her from her duties out of concern that she was in pain – she complained of a toothache – and that she would therefore be distracted while driving.  (*Id*.)  Vincent hand-wrote a complaint which described several recent interactions with unruly or demanding customers, a dispatcher who yelled at her, and allegations that "some of the operators and dispatchers" have insulted her, called her ugly, and propositioned her for sex.  (Exhibit E at 12–15.)

---

[1] Defendants' motion is unopposed.  Though Defendants properly served Vincent with a "Notice to Pro Se who Opposes a Motion for Summary Judgment" pursuant to Local Rule 56.2, Vincent refused service and did not file a 56.1 counterstatement.  (*See* Notice to pro se litigant (Doc. No. 30); Letter re: Motion for Summary Judgment (Doc. No. 31) (documenting Vincent's refusal to accept service of the instant motion).)  Pursuant to Local Rule 56.1(c), Defendants' 56.1 statement of material facts is deemed to be admitted "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  In the case of an unopposed motion for summary judgment, "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co*., 373 F.3d 241, 244 (2d Cir. 2004); *see also Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

[2] Defendants filed two documents containing numerous exhibits. The first, Doc. No. 29–1, contains Exhibits D–T. The second, Doc. No. 29–2, contains Exhibits U–DD. The Court will cite to the Exhibits by letter and use ECF pagination to identify specific pages.  All other page numbers refer to ECF pagination.

Vincent was directed to report to the Medical Assessment Center ("MAC") on April 28, 2014, to determine if she could safely operate a bus in customer service. (Defs.' SOF ¶ 8; *see also* Exhibit F.) She was examined by Dr. Hachung Chung and was referred to Brooklyn Psychiatric Associates for a consultative psychiatric evaluation. (Defs.' SOF ¶ 9; *see also* Exhibit G.) There, Vincent was evaluated by Dr. Steve E. Newman, who determined that she "should not be in regular service for now. I would recommend she be assigned to non passenger service" and she should "be under the care of a psychiatrist… to distinguish between a delusional disorder and schizophrenia as the treatment of the two entities are different." (Defs.' SOF ¶ 10; *see also* Exhibit H.)

Vincent independently saw a psychiatrist, Dr. Salvage, who examined Vincent and recommended that she be able to return to work. (Defs.' SOF ¶ 11.) Dr. Newman examined Vincent again on June 21, 2014, and determined that she "is coherent and logical and even if she still harbors irrational beliefs, they should not interfere with her ability to perform all duties expected of a NYC MTA bus operator." (*Id*.; *see also* Exhibit J.) On July 2, 2014, she was returned to full duty. (Defs.' SOF ¶ 12; *see also* Exhibit K.)

On September 10, 2014, Vincent was served with disciplinary charges and suspended for five days for cursing at her supervisor. (Defs.' SOF ¶ 13; *see also* Exhibit L.)

On December 15, 2014, Vincent claimed that three different buses she was assigned had mechanical issues and refused to drive them. (Defs.' SOF ¶ 14.) She was observed walking back and forth, saying in an agitated manner that "everybody was against" her, her "mind was made up and there's no turning back," and "one life to live, live or die." (*Id*.) Based on this behavior, she was sent for a medical evaluation to determine if she could safely operate a bus in passenger service. (*Id*.; *see also* Exhibit M.)

Dr. Newman examined Vincent on January 10, 2015, and determined that she continued to be delusional with no change since her last visit in May 2014.  (Defs.' SOF ¶ 15.)  Dr. Newman also stated that Vincent refused to take any antipsychotic medication and that "her paranoid delusions will likely continue or worsen ….  I do not see any possible resolution to her paranoia in the foreseeable future."  (*Id*.; *see also* Exhibit N.)  Dr. Savage declined to provide a recommendation that Vincent could return to work.  (Defs.' SOF ¶ 16; *see also* Exhibit O.)

Vincent began seeing a new psychologist, James Colasurdo, Psy.D., whom she saw for approximately twenty sessions between February 24, 2015, and August 21, 2015.  (Defs.' SOF ¶ 17.)  Dr. Colasurdo determined that Vincent did "not present with significant psychiatric symptoms" and that she should "be allowed to return to her job as an MTA bus driver."  (*Id*.; *see also* Exhibit P.)  On September 8, 2015, Vincent was certified to return to duty.  (Defs.' SOF ¶ 18; *see also* Exhibit Q.)

On September 30, 2015, NYCT received a complaint from a customer that Vincent was screaming at customers on the bus, and yelling rude insults at a passenger, including calling that passenger a "nigger," "black bitch," and stating he was "running around like a slave."  (Defs.' SOF ¶ 19.)  According to this complaint, Vincent also took the passenger's picture and threatened to call the police and tell them the passenger had touched Vincent's "small daughter."  (*Id*.; *see also* Exhibit R.)

On August 2, 2016, McGahern received a complaint from another bus operator who feared for her safety because Vincent repeatedly called her "a piece of shit."  (Defs.' SOF ¶ 20; *see also* Exhibit S.)  On November 30, 2016, Vincent cursed at her supervisor; called the police on her supervisor, stating that she was being harassed; and refused to cooperate with her Superintendent's investigation into the incident.  (Defs.' SOF ¶ 21.)  Vincent told her

Superintendent to "go fuck yourself." (*Id.*; *see also* Exhibits T and U.) On April 10, 2017, Vincent was suspended 20 days for her November 30, 2016, misconduct. (Defs.' SOF ¶ 22; *see also* Exhibit T.)

On April 25, 2017, Vincent was observed yelling profanities; called her supervisor, Joel Salazar, a "motherfucker"; and threatened to sue him and call the police on him. (Defs.' SOF ¶ 23; *see also* Exhibit V.) On May 15, 2017, Vincent was served with disciplinary charges for being absent without leave since May 8, 2017. (Defs.' SOF ¶ 24; *see also* Exhibit W.) On May 31, 2017, Vincent was served with disciplinary charges for being insubordinate to her supervisor and saying "fuck you" to him. (Defs.' SOF ¶ 25; *see also* Exhibit X.)

On October 16, 2017, Vincent was served with disciplinary charges for unsafe operation of a bus, making a false report, and refusing to cooperate in an investigation, which stemmed from an incident several days prior. (Defs.' SOF ¶ 26; *see also* Exhibit Y.) The October 16, 2017, disciplinary charges were resolved at arbitration on December 19, 2017: Vincent was suspended for 30 days for misconduct. (Defs.' SOF ¶ 27; *see also* Exhibit Z.)

Vincent was directed to appear for a medical assessment on January 23, 2018, but neither appeared nor returned to work. (Defs.' SOF ¶ 28.) She was notified that a disciplinary hearing was scheduled on May 9, 2018, for her failure to appear, but Vincent did not attend. (*Id.*) On August 21, 2018, Vincent's employment was terminated for abandoning her job. (*Id.*; *see also* Exhibit C.)

Plaintiff's Claims

On April 3, 2015, Vincent, through counsel, filed a charge of discrimination on the basis of disability with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 32; *see also* Exhibit DD (Doc. No. 29-2) at 72–79.) On February 29, 2016, the EEOC concluded its

investigation and issued a right-to-sue letter.  (Compl. ¶ 36.)  Vincent timely filed her complaint

on January 5, 2017, and was also represented by counsel at that time.

In her complaint, Vincent alleges that she was sent for a medical evaluation in April 2014

because she submitted a formal written complaint, in writing, detailing several instances of

harassment, including at least some allegations she could substantiate with evidence; NYCT

failed to investigate these complaints, deeming them "too fantastical to warrant an investigation,"

and subjecting her to a psychiatric evaluation and unpaid leave.  (Compl. ¶¶ 13–16.)  She also

alleges that after she was assigned several defective buses in a row on December 15, 2014, she

began to "pray out loud in an effort to calm her nerves," which McGahern perceived as "agitated

behavior" and therefore subjected her to medical exams and drug testing.  (*Id*. ¶¶ 23–26.)

"Despite evaluations by independent physicians finding no significant psychiatric symptoms,"

Vincent alleges that she has been subjected to "ongoing discrimination and harassment" since

her return, and was subjected to a breathalyzer and drug test on November 30, 2016, without

cause, prompting her to file a police report.  (*Id*. ¶¶ 37–38.)

Vincent brings nine causes of action.  In her first cause of action, Vincent alleges that she

was discriminated against when she was removed from duty, sent for a medical evaluation,

suspended without pay, and terminated based on perceived disability in violation of the ADA.

(Compl. ¶¶ 39–44.)  In her second cause of action, Vincent alleges that she was subject to hostile

work environment harassment upon return from her unpaid leave, and that Defendants failed to

"take any corrective measures to improve or remedy the ongoing unlawful and discriminatory

behavior, despite [Vincent's] repeated complaints of harassment."  (*Id*. ¶¶ 45–50.)  In her third

cause of action, Vincent alleges failure to provide reasonable accommodations under the ADA,

including a failure to engage in an interactive process to accommodate Vincent in a different position, as was recommended by defendants' "own physician." (*Id*. ¶¶ 51–56.)

Vincent's fourth, fifth, and sixth causes of action, respectively, state parallel claims of disability discrimination, hostile work environment, and failure to accommodate under the NYSHRL. (*Id*. ¶¶ 57–74.) Her seventh, eighth, and ninth causes of action state parallel claims under the NYCHRL. (*Id*. ¶¶ 75–95.) Vincent seeks declaratory and injunctive relief, compensatory and punitive damages, attorneys' fees, and costs. (*Id*. at 15–16.)

Vincent testified at her deposition that she was subjected to discrimination and harassment based on perceived disability and, for the first time, stated that she had been subjected to discrimination and harassment due to her race and gender. (Exhibit B (Doc. No. 29) at 28.) Vincent stated that she did not have a disability but that McGahern, "the supervisors," and "the operators" believed that she did and called her "paranoid." (*Id*. at 28–29.) Vincent asserted that at least three of her male coworkers asker her out on dates or propositioned her for sex, (*id*. 41–43, 49–52, 67–70), but that after she told McGahern about a bus operator who had propositioned her, bus operator did not say such things to her again. (*Id*. at 52.) Vincent also said that from 2016–2017, bus operator Clerneth Dennis would mockingly hug her and ask her out on dates; when she told him to stop and stopped responding to his greetings, he stopped asking her out, but on one occasion told bystanders to "look [at] that crazy girl," referring to Vincent. (*Id*. at 63–66.) Vincent stated that on one occasion in 2016 or 2017 her coworker Debby King called her crazy, paranoid, and schizophrenic and told her she stinks, and that King and another coworker often laughed at Vincent's wig and her hair. (*Id*. at 45–46, 88.) Vincent testified that she never heard McGahern make a derogatory statement about her race, gender, or actual or perceived disability. (*Id*. at 56.)

Vincent also stated that she was harassed by her coworkers when they sent her for medical examinations, (*id.* at 34–37), gave her a bus that was dusty or had mechanical problems, (*id.* at 37–41, 79–81), and chastised or yelled at her (*id.* at 37, 46–48, 80–81).  Further, Vincent stated that her coworkers harassed her when they required her to stay ten minutes past the end of her shift (*id.* at 73–75, 83–85) and dropped paperwork they handed to her (*id.* at 71–72).

The Instant Motion

Defendants now move unopposed for summary judgment with respect to all claims, raising four principal arguments.  First, Defendants assert that Vincent failed to plead race or gender discrimination or exhaust her administrative remedies with respect to race and gender discrimination claims pursuant to Title VII of the Civil Rights Act ("Title VII").  (Defs.' Mem. (Doc. No. 28) at 9–10).  Further, Vincent includes in her complaint allegations that occurred before June 10, 2014, which are time-barred.  (*Id.* at 10–11.)  Second, Defendants argue that Vincent fails to state a prima facie case of disability discrimination.  (*Id.* at 13.)  Her allegations that she was sent for medical evaluations, required to sign documents, assigned defective buses, yelled at, treated rudely, or made to stay at work for an extra ten minutes do not constitute adverse employment actions.  (*Id.* at 13–14.)  Further, her claims that she was removed from service, put on unpaid leave, and terminated, which could constitute adverse employment actions, were motivated by legitimate non-discriminatory reasons.  (*Id.* at 14–15.)  Specifically, defendants argue that Vincent was terminated from her position because she abandoned her job.  (*Id.* at 15.)  They further argue that she was removed from passenger service and sent for medical evaluation out of concern for her safety and the safety of passengers and coworkers and pursuant to Defendants' obligations under the Vehicle and Traffic Law ("VTL") to certify that its bus operators are medically qualified to operate a bus.  (*Id.* at 15–16; N.Y. Veh. & Traf. Law § 509.)

When Vincent was medically cleared to return to work, she was permitted to do so.  (Compl. at 17–18.)

Third, Defendants assert that Vincent has failed to establish a prima facie case of denial of a reasonable accommodation because she was able to perform her job without accommodations.  (*Id*. at 19.)  Further, defendants argue that Vincent was provided accommodations as she was given leave to seek medical treatment.  (*Id*. at 19–20.)  Fourth, Defendants argue that Vincent has failed to establish a prima facie case of hostile work environment discrimination under the ADA and the NYSHRL.  (*Id*. at 20.)  The comments were not sufficiently severe or pervasive to constitute a hostile work environment.  (*Id*. at 21.)  Many of the alleged inappropriate comments were not related to her disability or perceived disability.  (*Id*. at 21–22.)  Being called crazy, paranoid, or schizophrenic, while offensive, are not egregious enough to create a hostile work environment.  (*Id*. at 22.)  Moreover, Vincent cannot impute the acts of her coworkers onto Defendants; none of her supervisors made derogatory remarks about her disability.  (*Id*.)  Finally, Vincent's claim of hostile work environment harassment under the NYSHRL fails because the conduct of which she complains was no more than "petty slights and trivial inconveniences."  (*Id*. at 23 (quoting *Kaur v. New York City Health & Hosps. Corp.*, 688 F.Supp.2d 317,327–28 and 340 (S.D.N.Y. 2010).)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it may impact the "outcome of the suit under the governing law."  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed," and the Court must draw all "justifiable" or reasonable inferences in favor of the nonmoving party.  *Anderson*, 477 U.S. at 255 (citation omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) ("[T]he court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions . . . in the light most favorable to the party opposing the motion."  (citations omitted)).

Once the moving party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted) (citation omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases and stating that the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation").  In other words, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

The Court bears in mind that in discrimination cases "'smoking gun' evidence of discriminatory intent is rare and most often must be inferred." *Forsyth v. Fed'n Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)), *abrogated on other grounds*, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007).  Accordingly, the Second Circuit has "repeatedly emphasized 'the need for

10

caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).

The same standards for summary judgment apply where, as here, the nonmovant is proceeding *pro se*, although "the *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y. City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.").

## DISCUSSION

### I.     Race and Gender Discrimination Claims

To state a discrimination claim under Title VII, a complaint must provide a short statement of the claim sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (internal citation omitted).  For courts to hear Title VII claims, the claim must be "either included in an EEOC charge or [] based on conduct which is 'reasonably related' to that alleged in the EEOC charge." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).

Here, Vincent, who is currently proceeding *pro se* but whose complaint was prepared and submitted by counsel, filed a complaint containing a statement of facts and enumerating nine causes of action, all of them relating to her actual or perceived disability and none of them describing race or gender discrimination or harassment.  Further, Vincent's charge of discrimination filed with the EEOC selects only disability as the grounds for her claims, not race or gender.  Accordingly, Vincent failed to give Defendants fair notice of any race or gender

discrimination claims and failed to exhaust her administrative remedies with regard to any race or gender discrimination claims.  Vincent did not respond to the instant motion and it is unclear whether she intended to pursue race or gender discrimination claims in the instant action; nevertheless, to the extent that she attempted to raise claims of race or gender discrimination with her deposition testimony, these claims are dismissed.

## II.   Time-Barred Claims

To bring a timely claim pursuant to Title VII, 42 U.S.C. § 2000e–5(e)(1) "requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act, unless the 'person aggrieved has initially instituted proceedings with a State ... agency with authority to grant or seek relief from such practice,' in which case the claimant has 300 days to file his charge with the EEOC."  *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999); *Sullivan v. City of N.Y.,* 08-CV-7294 (LTS)(MHD), 2011 U.S. Dist. LEXIS 36381, at *6 (S.D.N.Y. Mar. 25, 2011) ("In states such as New York where an agency addresses charges of discrimination, the statute of limitations for filing a charge with the EEOC is 300 days from the date of the discriminatory act.").  When bringing hostile environment claims, however, a plaintiff may rely upon events that occurred outside of the 300-day filing period.  *AMTRAK v. Morgan*, 536 U.S. 101, 118 (2002) ("Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.  In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.").

Here, Vincent filed her charge of discrimination with the EEOC on April 6, 2015.  Her complaint includes allegations that she faced an incident of disability discrimination in April

2014, when she was sent for a medical evaluation after reporting harassment that her supervisor believed the be "too fantastical to warrant an investigation."  Since this incident is alleged to have occurred more than 300 days prior to the filing of the charge of discrimination, Vincent's claims relating to this discrete incident are time-barred and therefore must be dismissed. However, to the extent Vincent is alleging that this incident and others were part of repeated and ongoing harassment giving rise to a hostile work environment, Vincent may rely on these allegations for the purposes of her hostile work environment claim.

## III.    Disability Discrimination

Courts evaluate ADA discrimination claims under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–05 (1973).  The *McDonnell Douglas* framework requires that the plaintiff first prove a prima facie case of employment discrimination.  To state a prima facie case of discrimination under the ADA, a plaintiff must show that (a) her employer is subject to the ADA; (b) she is disabled within the meaning of the ADA or perceived to be so by her employer; (c) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) she suffered an adverse employment action because of her disability.  *Brady v. Wal-Mart Stores. Inc.*, 531 F.3d 127, 134 (2d Cir. 2003). The burden of stating a prima facie case is "not onerous," *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), and is often described as "*de minimis.*"  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).

After a plaintiff states a prima facie case of discrimination, the burden shifts to the employer to provide "a legitimate, non-discriminatory reason for its actions."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).  If the employer satisfies this burden, the plaintiff must then establish that the employer's explanation is

a pretext for discrimination.  *Velez v. SES Operating Corp.*, No. 07-CV-10946 (DLC), 2009 WL 3817461, at *11 (S.D.N.Y. Nov. 12, 2009).

Here, Defendants do not dispute the first three elements of Vincent's prima facie case. However, they assert that Vincent has failed to demonstrate that she suffered an adverse employment action when she was sent for medical evaluations, required to sign documents, assigned defective buses, yelled at, treated rudely, or made to stay at work for an extra ten minutes.  Further, Defendants argue that though Vincent may have experienced adverse employment actions when she was placed on unpaid leave, removed from service, and when her employment was terminated, but that those adverse employment actions were taken for legitimate, non-discriminatory reasons.

### A.  Adverse Employment Actions

An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Weeks v. New York State*, 273 F. 3d 76, 85 (2d Cir. 2001) (internal citations and quotation marks omitted).  A "materially adverse change" may be indicated by termination of employment, a decrease in salary or wages, or a loss of benefits.  *Galabaya v. New York City. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  "An adverse employment action is … more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotations and citations omitted).  "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of adverse."  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)

Here, Vincent did not suffer from an adverse employment action when she was required to sign paperwork, required to stay at work for an extra ten minutes, yelled at, treated rudely, or

assigned defective buses.  These actions, though undoubtedly inconvenient and disruptive, were not accompanied by an attendant loss of pay, benefits, or other materially adverse change in her employment.  As such, they are not adverse employment actions.  Further, Vincent asserts that she suffered an adverse employment action when she was subjected to a breathalyzer and drug test on November 30, 2016, as part of an investigation into her alleged misconduct after she called the police to report harassment and refused to cooperate with Defendants' investigation.  There is no suggestion that she suffered any adverse consequences from the administration of a breathalyzer or drug test at that time, such as a loss of pay or benefits, nor does the record demonstrate when such testing occurred or make clear whether it was her employer or the police who administered these tests.  Drawing all inferences in favor of Vincent, the administration of a breathalyzer and drug test during the investigation into Vincent's alleged misconduct is not an adverse employment action.

Vincent was removed from service and placed on unpaid leave on December 15, 2014, which lasted until she was recertified for work on September 8, 2015.  These actions materially altered the conditions of her employment by causing her to lose pay during her periods of leave, and so constitute adverse employment actions.  Moreover, her employment was terminated on August 21, 2018, which also constitutes an adverse employment action.

Vincent separately asserts that having been sent for medical evaluation on December 15, 2014, constituted an additional adverse employment action.  Though her medical evaluation did not itself cause any materially adverse change in her employment, it was part of a broader set of actions taken by Defendants which culminated in an unpaid leave of absence.  Assuming for the sake of argument that her December 15, 2014, medical evaluation constituted an adverse

employment action, the Court proceeds to the next step of the *McDonnell Douglas* burden-shifting framework.

### B.  Legitimate, Non-Discriminatory Reasons

At step two of the *McDonnell Douglas* burden-shifting framework, the defendant bears "the burden of producing an explanation to rebut the prima facie case …. The purpose of the *McDonnell Douglas* framework is to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335 (2d Cir. 1997).

### i.  Events Arising from December 15, 2014

Here, Defendants argue that Vincent was removed from service, and subjected to a medical evaluation on December 15, 2014, for the legitimate non-discriminatory reason of ensuring the safety of Vincent, her passengers, and her colleagues.  Further, Defendants assert that Vincent was placed on unpaid leave in accordance with Defendants' duties to certify that drivers could safely operate a passenger bus as set forth in Article 19-A of the VTL.

Defendants have legal obligations as providers of public transportation to certify their bus operators as medically qualified to drive a bus.  *See* N.Y. Veh. & Traf. Law § 509.  The VTL requires Defendants to conduct periodic medical examinations of bus operators.  *See* N.Y. Veh. & Traf Law § 509(g)(1).  Regulations promulgated pursuant to the VTL set forth certain physical and medical requirements as for bus operators.  *See generally* 15 NYCRR § 6.1. Among them are the requirement that a bus operator have "no mental, nervous, organic, or functional disease of psychiatric disorder likely to interfere with the ability to control and safely operate a bus," 15 NYCRR § 6.10(b)(8).  Further, under 15 NYCRR § 6.23, "no driver shall

operate a bus and a motor carrier shall not permit a driver to operate a bus while the driver's

ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness or any

other cause, as to make it unsafe for him to begin or continue to operate the bus."

Vincent was removed from service and sent for a medical evaluation on December 15,

2014, after she rejected three buses for mechanical problems that maintenance workers could not

find, appeared agitated, and was overheard repeating several phrases, including "one life to live,

live or die." Based on this distressed and unusual behavior, Vincent was removed from service

and sent for a medical evaluation, in compliance with Defendants' obligations to ensure that all

bus operators are safely able to operate a bus and have not been impaired by illness, fatigue, or

any other cause. At her medical evaluation, Dr. Newman concluded that Vincent could not

safely operate a bus in passenger service, and so she was placed on leave. After Vincent's

independent psychologist determined, after approximately 20 sessions between February 24,

2015, and August 21, 2015, that Vincent should be permitted to return to work as a bus driver,

she was certified to return for duty on September 8, 2015. These actions comport with

Defendants' obligations to ensure that Vincent was capable of safely operating a bus prior to

permitting her to return to work as a bus operator. Accordingly, Defendants have met their

burden of production under step two of the *McDonnell Douglas* framework with respect to

Vincent's claims of discrimination arising from the events of December 15, 2014. The record

contains no evidence that would tend to contradict this proffered explanation, and so Defendants

are entitled to summary judgment with respect to this claim.

### ii.     Termination

Defendants assert that they had a legitimate, non-discriminatory reason to terminate

Vincent's employment because she had abandoned her job. The undisputed record demonstrates

that on January 19, 2018, following a 30-day suspension for misconduct, Vincent was directed to report to NYCT's Medical Assessment Center on January 23, 2018.  She failed to appear and was notified of a disciplinary hearing for her failure to appear.  On May 9, 2018, she did not appear for that hearing, and was terminated for abandoning her job.  Thus, Defendants have met their burden of production under step two of the *McDonnell Douglas* framework with respect to this claim.  The record contains no evidence to the contrary; accordingly, Defendants are entitled to summary judgment with respect to Vincent's claim of disability discrimination under the ADA.

## IV.    Hostile Work Environment

To establish a claim for hostile work environment harassment under the ADA, a plaintiff must demonstrate: "(l) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano v. Costello*, 294 F. 3d 365, 373 (2d Cir. 2002) (internal quotations and citations omitted).  A hostile work environment claimant must satisfy both objective and subjective elements; "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive the environment to be abusive."  *Id.* at 374 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted)).  In addition, for "comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of . . . enmity."  *Schwapp v. Town of Avon*, l18 F.3d 106, 110 (2d Cir. 1997).  The "incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive."  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998).  "It is axiomatic that mistreatment at work, whether through

18

subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable … only when it occurs because of an employee's … protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also Parekh v. Swissport Cargo Servs., Inc.*, 08-CV-1994 (CPS), 2009 U.S. Dist. LEXIS 8543 at \*4-5 (E.D.N.Y. Feb. 5, 2009) ("Although [t]he incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred, they must occur under circumstances in which the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." (internal quotation marks and citation omitted)).

Defendants argue that Vincent fails to show that she faced hostile work environment harassment due to her disability because the alleged harassment was not severe or pervasive, most of the comments she claims were harassment were not discriminatory based on disability, and there is no basis to impute the objectionable conduct to her employer.

Vincent lists a litany of perceived slights in her deposition testimony. Some of these incidents cannot meet the objective prong of a hostile work environment claim, including a day when she was required to stay ten minutes late, and another instance when a coworker dropped paperwork when handing it to her. Vincent also describes unpleasant or unprofessional conduct by coworkers who yelled at her, laughed at her wig and her hair, gave her a dirty bus, and propositioned her. Though Vincent describes a less than pleasant work environment, she does not provide support for the inference that she was subjected to the enumerated unpleasant and unprofessional encounters due to her disability of perceived disability.

Vincent does, however, provide two examples of harassment that are clearly based on her perceived disability. Vincent testified that on one occasion in either 2016 or 2017, coworker

Debby King called her crazy, schizophrenic, "dirty girl," and told her she "stinks." She also testified that after she told bus operator Clerneth Dennis to stop asking her out on dates, he called her "that crazy girl." These isolated instances, though cruel and inappropriate, do not demonstrate a pattern of harassment that is severe or pervasive.

Further, Vincent provides no basis for imputing these behaviors to her employer. Vincent testified that McGahern, her supervisor, never made derogatory statements about her disability or perceived disability. She also stated that after she told McGahern about a bus operator who propositioned her for sex, that bus operator did not engage in that crude behavior again. Though Vincent alleges in her complaint that her reports of harassment were dismissed as fantastical or not investigated, the record evidence does not support this claim. Though it is true that Vincent was sent for a medical evaluation after she filed a formal complaint with McGahern about a threatening text message she received in 2014, she also included in that complaint fears that "everyone" was against her and that her phone was being bugged, as well as complaints about being in pain, all of which appropriately triggered referral for a medical evaluation pursuant to Defendants' obligations under the VTL, as discussed in Section III above. Vincent fails to set forth a specific basis for imputing the acts of her coworkers to her employers, and therefore Defendants are entitled to summary judgment on Vincent's hostile work environment claim under the ADA.

## V.    Failure to Accommodate

Like disability discrimination claims under the ADA, reasonable accommodation claims brought under the ADA follow the *McDonnell Douglas* burden-shifting framework. "A plaintiff states a prima facie failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had

notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of N.Y.*, 711 F.3d 120, 125–26 (2d Cir. 2013).  The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment."  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).   Once that prima facie case is established, the burden shifts to the defendant to show "(1) that making a reasonable accommodation would cause hardship, and (2) that the hardship would be undue."  *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F. 3d 1, 6 (2d Cir. 1999).

Defendants argue that Vincent has failed to set forth a prima facie case of reasonable accommodation denial because she was able to perform the essential functions of her job without reasonable accommodation.  Further, Defendants assert that Vincent did receive reasonable accommodation when she was granted unpaid leave to receive treatment for her disability.

Between July 2, 2014, and December 15, 2014, and then again from December 8, 2015, through December 19, 2017, Vincent was able to fully perform her job as a bus operator. Vincent sets forth insufficient evidence to conclude that she needed a reasonable accommodation during those time periods in order to perform the essential functions of her job.  However, there is no dispute that she twice was removed from service due to her disability – once on April 23, 2014, and again on December 15, 2014.  On those occasions, she was subjected to a medical evaluation and diagnosed with a mental condition that prevented her from safely operating a passenger bus.  Under the VTL, as already discussed in Section III, Defendants were prohibited from allowing Vincent to resume her work as a bus operator until she was medically cleared to do so, which is precisely what happened.  Until a medical professional could certify that Vincent

21

could safely return to work as a bus operator, Defendants provided Vincent with unpaid leave to seek treatment for her diagnosis, which is a reasonable accommodation.  Accordingly, Vincent has failed to set forth a prima facie case of reasonable accommodation denial under the ADA, and Defendants are entitled to summary judgment on this claim.

## VI.   Remaining State Law Claims

Vincent's remaining causes of action are brought under the NYSHRL and NYCHRL. "When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 597-98 (2018) (citing 28 U.S.C. § 1367(c)).  Accordingly, this Court declines to exercise supplemental jurisdiction over and dismisses the state law claims in Counts Four through Nine without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted with respect to the first three causes of action, and the remaining counts are dismissed without prejudice.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to mail a copy of the judgment and this Memorandum and Order to Vincent, to note the mailing on the docket sheet, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      March 30, 2021

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge

22